Filed 12/29/21  In re I.T. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re I.T., a Person Coming Under the Juvenile Court Law. | C094108 |
| SACRAMENTO COUNTY DEPARTMENT OF CHILD, FAMILY AND ADULT SERVICES, Plaintiff and Respondent, v. C.B., Defendant and Appellant. | (Super. Ct. No. JD240477) |

C.B., mother of the minor (mother), appeals from the juvenile court's order terminating parental rights and freeing the minor for adoption.  (Welf. & Inst. Code, §§ 366.26, 395.)[1]  Mother contends the court erred by finding the beneficial parental

---

[1]  Undesignated statutory references are to the Welfare and Institutions Code.

1

relationship exception to adoption did not apply. (§ 366.26, subd. (c)(1)(B)(i).) We will affirm the juvenile court's order.

## BACKGROUND

On March 4, 2020, the Sacramento County Department of Child, Family and Adult Services (Department) filed a dependency petition on behalf of the minor I.T. pursuant to section 300, subdivision (b), alleging mother's substance abuse problem, from which she failed and/or refused to rehabilitate, impaired her judgment and ability to provide care, protection, and supervision for the newborn minor who tested positive for methamphetamine at birth. It was further alleged, pursuant to section 300, subdivision (j), that I.T.'s sibling, L.T., had been adjudged a dependent of the juvenile court due in part to substance abuse issues related to both mother and father S.T. (parents) and the parents' failure to participate in court-ordered reunification services resulting in termination of those services.

Both parents were present at the initial hearing on March 5, 2020. The court ordered the minor removed from the parents' care and custody and ordered the Department to provide reunification services and visitation to the parents.

The March 2020 jurisdiction/disposition report noted the Department's concern for the minor due to mother's untreated substance abuse problem and the parents' failure to participate in reunification services for the minor's sibling, L.T. The Department recommended the court sustain the petition and bypass both parents for reunification services pursuant to section 361.5, subdivision (b)(10) and (13).

According to the first addendum report filed July 7, 2020, the social worker's repeated attempts to contact and meet with the parents between April and July 2020 were unsuccessful, though the parents were speaking by telephone with the minor's caregiver and participating in video visits with the minor and her sibling.

A second addendum report filed August 20, 2020, informed the court regarding the parents' progress in services. Mother reportedly completed her parenting classes and

was engaged in counseling. However, as of August 14, 2020, mother had not drug tested or engaged in substance abuse treatment, the "core issue" according to the social worker.

The jurisdiction/disposition hearing commenced on August 21, 2020, with a day of testimony from the parents and two social workers. At the continued hearing on August 26, 2020, the court sustained the allegations in the petition, adjudged the minor a dependent of the juvenile court, and ordered out-of-home placement. The court bypassed the parents for reunification services pursuant to section 361.5, subdivision (b)(10) and (13) and set the matter for a section 366.26 hearing.

According to the December 2020 selection and implementation report, the parents were participating in weekly supervised visits with the minor without incident. The minor, then 10 months old, was developmentally on track and was living with the same caregivers she was placed with when detained and with whom her sibling had been placed. The minor had developed a "healthy bond" with the caregiver, and during home visits the minor cried and sought out the caregiver for comfort. The Department recommended termination of parental rights, noting that while the parents had been consistent with visits, they had not changed the circumstances which led to the minor's removal. The Department stated the minor was thriving emotionally and was receiving the appropriate care and nurturing from her caregivers, and she did not appear to have a relationship with either parent such that termination of parental rights would cause her significant emotional harm.

In a subsequent report filed March 10, 2021, the Department reported that mother had neither enrolled in nor participated in any substance abuse treatment program. Attached to the report were visitation notes from October 2020 through February 2021 detailing mother's (and father's) weekly visits with the minor. During those visits, the parents reportedly fed and played with the minor, gave the minor gifts, took pictures of the minor, and generally engaged with the minor without incident. It was noted that at the start of several visits, the minor cried when she was placed with the parents.

The contested selection and implementation hearing commenced on April 28, 2021. Father testified that he and mother had been visiting the minor weekly since August 2020. He testified that, for the first several months, the minor cried when she left her caregiver. However, the minor "grew into it" and started to reach out to mother. Father noted the minor called mother "mama" at the visit earlier that day. Father also testified that, during visits, he and mother played with the minor, read books to her, helped teach her to walk and talk, and changed her diapers. Father stated the minor "loves the foster mom just as much as she loves us" and was, for the most part, comfortable with separating from the parents when the visits ended. Father testified that the minor was "attached to [mother] like to the hip." When asked why he thought it would be in the minor's best interest to continue the relationship with her parents, father answered, "Because we have that father-daughter mother-daughter relationship, you know. It's parents and their kid. You know what I mean? We have a strong connection. It just seems a little inhumane to rip us apart like that. And if it's really about the kid's best interest, that would kill her. That would mess her up if we weren't in her lives." Father stated he did not agree with the recommendation to terminate parental rights, but he also did not think the minor should be taken from her caregivers stating, "I wish we could split it down 50/50." Father testified he would like to remain in the minor's life a "couple days, few days a week would be awesome" and added, "I would never fully take her away from the foster parents because they are great people."

Following argument from counsel, the court found the minor was generally adoptable and the beneficial parental relationship exception to adoption did not apply. The court terminated parental rights, freeing the minor for adoption.

Mother filed a timely notice of appeal from the order terminating parental rights.

4

## DISCUSSION

As mother's sole contention, she claims there was insufficient evidence to support the juvenile court's finding that the beneficial parental relationship exception to adoption did not apply. We disagree.

At the selection and implementation hearing held pursuant to section 366.26, a juvenile court must choose one of the several " 'possible alternative permanent plans for a minor child. . . . *The permanent plan preferred by the Legislature is adoption*. [Citation.]' [Citation.] If the court finds the child is adoptable, it *must* terminate parental rights absent circumstances under which it would be detrimental to the child." (*In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1368.) There are only limited circumstances which permit the court to find a "compelling reason for determining that termination [of parental rights] would be detrimental to the child." (§ 366.26, subd. (c)(1)(B).) Such circumstances include when the parents have maintained regular visitation and contact with the child, the child would benefit from continuing the relationship, and termination of parental rights would be detrimental to the child. (§ 366.26, subd. (c)(1)(B)(1) [beneficial parental relationship exception]; *In re Caden C.* (2021) 11 Cal.5th 614 (*Caden C.*).)

The party claiming the exception has the burden of establishing the existence of any circumstances which constitute an exception to termination of parental rights. (*In re Cristella C.* (1992) 6 Cal.App.4th 1363, 1372-1373; *In re Melvin A.* (2000) 82 Cal.App.4th 1243, 1252; Cal. Rules of Court, rule 5.725(d)(2); Evid. Code, § 500.)

To prove that the beneficial parental relationship exception applies, the parent must show there is a significant, positive emotional attachment between the parent and child. (*In re Beatrice M.* (1994) 29 Cal.App.4th 1411, 1418-1419.) The parent must also prove that the parental relationship " 'promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents.' " (*In re S.B.* (2008) 164 Cal.App.4th 289, 297, quoting *In re*

5

*Autumn H.* (1994) 27 Cal.App.4th 567, 575.) "In other words, the court balances the strength and quality of the natural parent[-]child relationship in a tenuous placement against the security and the sense of belonging a new family would confer. If severing the natural parent[-]child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated." (*In re Autumn H.,* at p. 575.) On the other hand, when the benefits of a stable, adoptive, permanent home outweigh the harm the child would experience from the loss of a continued parent-child relationship, the court should order adoption. (*Caden C., supra,* 11 Cal.5th at p. 634; *In re Autumn H.,* at p. 575.)

The beneficial parental relationship exception to adoption "must be examined on a case-by-case basis, taking into account the many variables which affect a parent[-]child bond. The age of the child, the portion of the child's life spent in the parent's custody, the 'positive' or 'negative' effect of interaction between parent and child, and the child's particular needs are some of the variables which logically affect a parent[-]child bond." (*In re Autumn H., supra,* 27 Cal.App.4th at p. 576.)

The factual predicate of the exception must be supported by substantial evidence, but the juvenile court exercises its discretion in weighing that evidence and determining detriment. (*Caden C., supra*, 11 Cal.5th at pp. 639-640*; In re K.P.* (2012) 203 Cal.App.4th 614, 622.) We do not substitute our judgment for that of the juvenile court as to what is in the child's best interests. (*Caden C*., at pp. 640-641.) The specific elements of this statutory exception require a close examination of "the importance of the child's relationship with the parent or the detriment of losing that relationship." (*Id.* at p. 626.) "When it weighs whether termination would be detrimental, the court is not comparing the parent's attributes as custodial caregiver relative to those of any potential adoptive parent(s)." (*Id.* at p. 634.) "[C]ourts should not look to whether the parent can provide a home for the child; the question is just whether losing the relationship with the

6

parent would harm the child to an extent not outweighed, on balance, by the security of a new, adoptive home." (*Ibid.*)

Here, there was substantial evidence to support the court's finding that the beneficial parental relationship exception did not apply.

Mother claims she maintained regular visitation and contact throughout the proceedings in the limited time she was allowed, thus satisfying the first prong of the beneficial parental relationship exception. The Department does not dispute mother's claim, and the record bears out the fact that mother regularly visited the minor either via video or in person throughout the proceedings. However, even frequent and loving contact is not sufficient to establish this benefit absent a significant positive emotional attachment between parent and child. (*In re I.R.* (2014) 226 Cal.App.4th 201, 213.)

Mother asserts she was not merely a "friendly visitor." (*In re Angel B.* (2002) 97 Cal.App.4th 454, 468.) She argues the visitation notes and father's testimony demonstrated she soothed the minor when the minor was upset, she facilitated the minor's "physical, educational, and verbal development," she attended to the minor's physical needs and responded appropriately to the minor's potential health concerns, and she nurtured the minor and provided her with structure. She argues she formed a positive, loving, and affectionate bond with the minor, the strength of which appeared to increase over time. We are not persuaded.

The minor was removed from mother's care immediately following birth after both mother and the minor tested positive for drugs as a result of mother's ongoing and untreated substance abuse problem. The minor was placed with a caregiver who was also caring for the minor's sibling and remained with that caregiver throughout the proceedings. The minor was thriving with her caregiver, who provided for the minor's needs and with whom the minor had established a strong bond. The caregiver also provided skills, services, and support to ensure the minor was developmentally on track. While mother visited the minor for an hour each week and provided limited care and

7

support during those visits, there was little evidence that separating from mother at the end of those visits caused the minor any emotional trauma. And while mother had been visiting the minor weekly for many months, the minor had only just referred to her as "mama" the day of the selection and implementation hearing. Mother argues she had a "sufficiently substantial, positive, emotional" bond with the minor which increased over time. However, while the minor enjoyed visits and, as the juvenile court stated, "positive interactions," mother did not provide any evidence that losing the parent/child relationship would cause the minor to be greatly harmed. Based on the record, including father's testimony at the April hearing, mother has not established that losing the relationship with her would harm the minor "to an extent not outweighed, on balance, by the security of a new, adoptive home." (*Caden C., supra*, 11 Cal.5th at p. 634.)

Mother argues her failure to resolve her substance abuse issues and her potential unreadiness to resume custody did not categorically bar application of the beneficial parental relationship exception. Our state's Supreme Court has said exactly that. (*Caden C., supra*, 11 Cal.5th at pp. 637-638.) But, as the court in *Caden C.* also stated, "issues such as those that led to dependency often prove relevant to the application of the exception" in that they "speak to the benefit (or lack thereof) of continuing the relationship" and "could be directly relevant to a juvenile court's analysis in deciding whether termination would be detrimental." (*Id.* at pp. 637-639.) While mother was not required to offer evidence that she sought treatment for her substance abuse issues (*id.* at p. 642), her failure to seek treatment or to resolve her substance abuse issues both in the instant case and in the case of the minor's sibling, led the court to conclude that it would not be detrimental to the minor to terminate mother's parental rights.

The juvenile court did not err in finding the beneficial parental relationship exception to adoption did not apply.

## DISPOSITION

The juvenile court's order is affirmed.

/s/
HOCH, J.

We concur:

/s/
RAYE, P. J.

/s/
MAURO, J.